## THE PEOPLE v. CATHERINE J. KETCHUM.

*Criminal law—Obscene pictures—Negatives—Circulation—Intent.*

1. A negative is a picture, within the meaning of How. Stat. § 9289, which makes it an offense for any person to procure any obscene picture for the purpose of sale, exhibition, loan, or circulation.[1]
2. Sitting for the negative is procuring it, within the meaning of said statute.
3. Respondent was informed against under How. Stat. § 9289, for procuring a certain obscene picture of herself for the purpose of exhibition, loan, and circulation. The evidence failed to show that respondent did more than to sit for the negative from which the photograph was produced, and this fact was only shown by proof that the negative was found in the possession of photographers, together with negatives made by them

[1] For a consideration of the unlawfulness of obscene and indecent publications, including pictures, see note to *In re Worthington Co.*, 24 L. R. A. 110.

of her residence.   And it is held that the court should have directed a verdict of not guilty.

Exceptions before judgment from Ingham.   (Person, J.) Argued October 25, 1894.   Decided January 4, 1895.

Respondent was convicted of having procured an obscene picture of herself for the purpose of exhibition, loan, and circulation.   Conviction set aside, and new trial ordered. The facts are stated in the opinion.

*William A. Fraser* and *Jason E. Nichols,* for respondent.

*A. A. Ellis,* Attorney General, and *L. B. Gardner,* Prosecuting Attorney, for the people.

HOOKER, J.   Defendant was convicted under an information which charged her with having procured a certain obscene picture of herself for the purpose of exhibition, loan, and circulation.   Counsel for the people claim that the evidence shows that the defendant employed two itinerant photographers to make negatives of her residence; that subsequently these negatives were found among the effects of said photographers, and that Exhibit A was also found at the same time and place.   Exhibit A was a negative of a woman in a practically nude condition, and is claimed to be a negative of the person of the defendant. Exhibit B was a photograph made from this negative by direction of the prosecuting attorney or sheriff.   A witness named Cole testified that he saw a picture identically like Exhibit B in Mohr's cigar store.   There was no evidence that any photograph was made from the negative, except that made by the officer's direction, unless the picture described by Cole was such.   There was testimony tending to show that the photographers did some work upon nude fancy pictures for Mohr's saloon.   The court instructed the jury, in substance, that the negative is a picture,

within the meaning of the law; that, if the defendant voluntarily sat in a nude condition, to enable it to be taken, she assisted in obtaining it, and therefore procured it; and that an intention to circulate photographic prints from the negative would be an intention to circulate the picture, within the statute. He left the question of the intent with which it was procured to the jury.

We have no doubt that a negative is a picture. We think also that the court was right in holding that sitting for the negative was procuring the negative.

The purpose for which the picture was obtained is an essential element of the offense, and must be proved like any other element. There can be no presumption of a particular purpose; it must be a legitimate inference from the evidence. The facts that Wigle & Webb had the negative, and that Cole saw a picture printed from it, do not sufficiently prove it. The natural inference from these facts would be that she sat for a negative to obtain a picture or pictures for herself. While it may be admitted that the usual purpose of procuring photographs is exhibition to friends, it does not necessarily follow that such is the purpose. Nor is there any reason for thinking that she designed that Wigle & Webb should dispose of any to other persons. The purpose does not appear, unless from the fact that one was seen, or from the assumption that she expected or designed to give prints to her friends. There is nothing to show either. If there were testimony tending to show that she did exhibit or circulate the picture, we might legitimately infer that she intended, when she procured it, to make such use of it. But in this case she is not shown to have done more than to sit for a negative, and that only appears from the fact that the negative was found in the possession of the photographers, with whom she had done business in rela-

tion to other pictures. Upon this record the court should have directed a verdict of not guilty.

Conviction set aside, and a new trial ordered.

The other Justices concurred.